**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **X.K.S.P.** ***a minor by her aunt and legal guardian GILLIAN MARKS,*** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 1:15-cv-1831-DKL-TWP** |
| **vs.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** ***Acting Commissioner of Social Security,*** | ) | |
| | ) | |
| **Defendant.** | ) | |

*Entry on Judicial Review*

X.K.S.P., a minor by her aunt and legal guardian, brings this action for judicial review of the Social Security Administration's (the "agency") decision denying her application for Supplemental Security Income child benefits under the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). The parties have consented to the Magistrate Judge's jurisdiction to decide this case.

*Background*

An application for supplemental security income was filed on behalf of X.K.S.P., a child under the age of 18, alleging a disability onset date of November 2, 2009. She has Attention Deficit Hyperactivity Disorder ("ADHD"). Her primary problems are with impulse control and her behavior. The claim was denied initially and on reconsideration. In February 2014, a hearing was held before an Administrative Law Judge ("ALJ").

X.K.S.P. and her aunt who is also her guardian appeared and testified. In May 2014, the ALJ issued her written decision, finding that X.K.S.P. has not been disabled since the date the application for benefits was filed. [R. 10-24.] This action followed.

A child under the age of 18 is disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The agency uses a three-step sequential analysis to determine whether a child is disabled. 20 C.F.R. § 416.924. First, it determines whether the child is engaged in substantial gainful activity; if so, the claim is denied. *Id.* § 416.924(b). Second, the agency determines whether the child has a medically determinable impairment that is severe; if not, the claim is denied. *Id.* § 416.924(c). And third, it determines whether the child's impairments meet, medically equal, or functionally equal the severity of a listed impairment. *Id.* § 416.924(d). If so, the child will be found disabled; otherwise, the child is found not disabled. *Id.*

To "functionally equal" the severity of a listed impairment, an impairment "must be of listing-level severity." *Id.* § 416.926a(a). A child's functioning is assessed in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). An impairment is of listing-level severity if the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a), (d).

The ALJ found that X.K.S.P. was born in June 2004; thus she was a preschooler on the date her application was filed (April 12, 2012) and a school-aged child (9 years old) at the time of the ALJ's decision. Not surprisingly, X.K.S.P. has not engaged in substantial gainful activity. The ALJ found that X.K.S.P. has the severe impairments of ADHD and anxiety disorder, but does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in the regulations. [R. 13-16.] The ALJ also determined that X.K.S.P. does not have an impairment or combination of impairments that functionally equals a listed impairment. In doing so, the ALJ evaluated the evidence and assessed the degree of X.K.S.P.'s limitation in each of the six domains, finding her to have a less than marked limitation in domains (1) through (3) and no limitation in domains (4) through (6). [R. 18-24.] Accordingly, the ALJ concluded that X.K.S.P. was not disabled under the Act and denied her claim for benefits.

*Discussion*

The Court's review of the ALJ's decision is quite limited: the Court only determines whether the findings of fact are supported by substantial evidence and whether the ALJ made any legal error. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ must build a "logical bridge"

between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

In challenging the ALJ's decision, X.K.S.P. argues that the ALJ erred in finding that she was not in special education classes. She claims the ALJ ignored the February 2013 Section 504 Conference Committee Report (Exhibit 10F), which shows that she was diagnosed with ADHD and anxiety disorder, she was substantially limited in one or more major life activities, and she is "'handicapped' (disabled) and qualifies for Section 504 services." [R. 284-85.] Yet as Plaintiff acknowledges, her only accommodation was to allow her "extra test time for standardized tests … in small group with frequent breaks." [R. 287.] There is no suggestion in the record that Plaintiff was also in special education classes. But there is evidence to the contrary: X.K.S.P.'s aunt testified at the hearing that X.K.S.P. was not in any special education classes and does not have an Individualized Education Program in place, although she had special measures to help her succeed, referring to the arrangements for test-taking. [R. 37.] In addition, in June 2012, X.K.S.P.'s school reported that X.K.S.P. was in regular education classes. [R. 147.]

X.K.S.P. next submits that the ALJ's findings as to her functional abilities were contrary to the February 3, 2014 evaluation of her teacher, Kathy Hiland. [R. 322.] Plaintiff claims that her teacher reported that with her medication, X.K.S.P. had marked limitations in two functional domains: caring for yourself and health and well-being. That is plainly incorrect. As the record shows, Ms. Hiland reported that with medication, X.K.S.P. had "no limitation" in these two areas. [*Id.*] In fact, the teacher concluded that *with medication*, X.K.S.P. had "no limitation" in all functional areas but one: interacting

and relating to others, for which she found X.K.S.P. to have a "less than marked" limitation. [*Id.*] The teacher did find that *without her medication* Plaintiff had extreme limitations in four functional domains and between "less than marked" and "marked" in two other areas. In addition, the teacher wrote that X.K.S.P.'s "medication helps her to be successful." [*Id.*] Thus, the teacher's evaluation actually supports the ALJ's conclusion that X.K.S.P.'s symptoms and function improved with her medication and that she was not functionally disabled. The ALJ specifically cited the teacher's report in her written decision. [R. 16-17, 19-20 (citing Ex. 13F).] Furthermore, as the Commissioner argues, X.K.S.P.'s aunt testified that X.K.S.P. normally is on her medication Vyvanse. [R. 44.] There was a time when there was a lapse in their Medicaid benefits and the aunt could not pay for the medication [*id.*; R. 180], but other than that, X.K.S.P. has been taking Vyvanse for about three to four years and was still taking it at the time of the hearing. [R. 35.]

In an apparent effort to challenge the conclusion that her medication alleviated her symptoms, X.K.S.P. mentions the May 2, 2012 psychiatric evaluation by Harkirat S. Saggu, M.D., which stated that Vyvanse "did not seem to make much of a difference." [R. 235.] Nonetheless, Dr. Saggu renewed the prescription for Vyvanse, 40 mg once a day. [R. 238.] Two weeks later, X.K.S.P.'s aunt reported that "she had good weeks," and her dosage of Vyvanse was decreased to 20 mg. [R. 232.] The following month, Dr. Saggu noted that X.K.S.P. had responded to 40 mg of Vyvanse and increased her dosage of Vyvanse from 40 mg to 50 mg "to better control symptoms of ADHD." [R. 226.] In July 2012, X.K.S.P. was seen for a medication review. At that time, she was taking 50 mg of

Vyvanse and was "doing pretty well." [R. 224.] The physician, Maria A. Valena, M.D., noted that there was "[n]o trouble with her behavior this summer, eats and sleeps ok. No problems with mood or aggression," and her guardian "reports she is fine and did not have any suggestions on how to improve her meds." [*Id.*] A few months later, in October 2012, another physician, Robert Michael Pearce, M.D., noted that X.K.S.P.'s current medication—Vyvanse 50 mg—"seems to be controlling most of her ADHD symptoms." [R. 210.] All of these medical records support the ALJ's determination that X.K.S.P.'s symptoms and function improved with her Vyvanse.

To the extent X.K.S.P. argues that the ALJ ignored and rejected any other evidence supporting her claim for benefits, her argument is undeveloped and therefore waived. [*Pl.'s Br. Supp. Compl.*, doc. 22, at 14.] *See, e.g.*, *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again that perfunctory and undeveloped arguments … are waived."). Likewise, her perfunctory and undeveloped argument that the ALJ failed to build an accurate and logical bridge is waived. *See id.* And regardless of waiver, having reviewed the evidence and the ALJ's decision, the undersigned finds no support for these arguments.

Moreover, arguments not raised until the reply are waived. *See, e.g.*, *Hernandez v. Cook Cnty. Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011) (stating that arguments made for the first time in a reply brief are waived); *Brizendine v. Colvin*, No. 1:13-CV-01197-RLY, 2014 WL 4636542, at *5 (S.D. Ind. Sept. 16, 2014) ("arguments made in reply for the first time are waived"). In her reply, Plaintiff argues for the first time that the ALJ reasoned that when she was taking her medication, she did not have any symptoms of ADHD and

anxiety. But Plaintiff is wrong. The ALJ did not find that X.K.S.P. was symptom-free with medication. And the Commissioner has not taken such a position either. Rather, the Commissioner argues and the ALJ found that X.K.S.P.'s symptoms improved while she was on medication such that she was not disabled. Substantial evidence supports this conclusion, including X.K.S.P.'s aunt's testimony that Vyvanse has reduced X.K.S.P.'s ADHD symptoms and managed her impulse control. [R. 36.]

Furthermore, the arguments in the reply that the ALJ overlooked various pieces of evidence, such as a March 14, 2012 evaluation [*see* Ex. 2F, R. 187-90] and the aunt's testimony that medications alleviated but did not eliminate X.K.S.P.'s symptoms, are unsupported. The ALJ acknowledged the March 2012 evaluation, indicating that in early 2012, X.K.S.P. "continued to experience problems at school despite ADHD medication....." [R. 14 (citing Ex. 2F).] The ALJ further recognized that X.K.S.P.'s medication seemed to control most of her ADHD symptoms and she "continued to do well overall." [R. 15.] The ALJ also referred to the aunt's statement that X.K.S.P.'s ADHD symptomatology improved or was controlled when she was taking her medication. [R. 21.] Contrary to Plaintiff's argument, the ALJ never found, and Defendant has not argued, that X.K.S.P.'s ADHD medication eliminated all of her symptoms of ADHD and anxiety.

The ALJ's decision is supported by substantial evidence in the record, including X.K.S.P.'s aunt's testimony, X.K.S.P.'s teacher's evaluation, X.K.S.P.'s school records, her treatment records from Gallahue Mental Health Center, and the opinions of the state

agency reviewers who determined that her impairments or combination of impairments did not meet, medically equal, or functionally equal the listings.

*Conclusion*

For the foregoing reasons, the ALJ's decision should be affirmed. Final judgment will be entered accordingly.

ENTERED THIS DATE: 09/09/2016

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record